MARION FULLER, plaintiff in error, *vs.* CHARLES KITCHENS, defendant in error.

A negotiable note of the laborer, bought up by the employer after the contract of hiring, is not matter of defense to a summary process for enforcing the laborer's lien, in the absence of any request or encouragement to make the purchase, or of any promise to allow the note as payment or as set off.

Laborer's lien. Set-off. Before Judge HALL. Newton Superior Court. March Term, 1876.

Marion Fuller employed Charles Kitchens to do certain work for her as a laborer. The work was done, but she declined to pay him therefor. He foreclosed a laborer's lien before the county judge. She filed a counter-affidavit, setting up, among other defenses, a note on defendant which she had purchased after the contract was made but before suit brought. The county judge refused to allow the set-off, and rendered judgment for the plaintiff. The defendant carried the case, by writ of *certiorari*, to the superior court, where the judgment was affirmed. To this ruling defendant excepted.

J. P. SIMS, for plaintiff in error.

E. F. EDWARDS, for defendant.

BLECKLEY, Judge.

A laborer has a general lien upon the property of his employer: Code, section 1974. It is enforceable against personal property in a summary method, execution issuing upon mere affidavit: Section 1991. "If the person defendant in such execution, or any creditor of such defendant, contests the amount or justice of the claim, or the existence of such lien, he may file his affidavit of the fact, setting forth the ground of such denial, which affidavit shall form an issue to be returned to the court and tried as other causes. If only a part of the amount claimed is denied, the amount admitted to be due must be paid before the affidavit shall be received by the officer:" *Ibid.* When a laborer hires to work for his creditor, with no express agreement that the wages are not to be applied to the debt, the law would so apply them. So, if after the hiring, the employer were to make advances in money or property, in the absence of a stipulation to the contrary, such advances would go in reduction or extinguishment of the claim for wages. So, too, would debts of the laborer, bought up by the employer at his request, or with his express consent. In each of these, cases there would be reason to think that the parties contemplated the very result,

and no other, which we have said would follow. There would be something more than the naked element of set-off; there would be an implied agreement that the wages, in whole or in part, as the case might be, should be satisfied with the matter of the cross-demand. But we think set-off, pure and simple, is not fully within the terms above quoted from the Code. With no special fact to connect the two demands in the mutual contemplation of the parties, it is not apparent that the amount or the justice of the claim for wages, or the existence of a lien therefor, would be affected by the existence of a set-off arising out of transactions wholly disconnected with the labor or the wages: See 23 *Georgia Reports*, 43.

Judgment affirmed.